1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

CARMEN SOCORRO DELGADILLO,                **1:12-cv-703 GSA**

10

                    Plaintiff,

11

        v.

12

CAROLYN W. COLVIN, Acting                **ORDER REGARDING PLAINTIFF'S**
13  Commissioner of Social Security[1]     **SOCIAL SECURITY COMPLAINT**

14                   Defendant.

15

16

17

18                         **INTRODUCTION**

19       Plaintiff Carmen Socorro Delgadillo seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21  Supplemental Security Income payments under Title XVI of the Social Security Act.  The matter

22  is pending before the Court on the parties' briefs, which were submitted, without oral argument,

23

24  to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

25  ///

26

    _____
27  [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule
    25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the
28  defendant in this action.
    [2] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 & 9.

                                        1

### THE ADMINISTRATIVE PROCEEDINGS

**1. Procedural History**

On June 18, 2008, Plaintiff filed an application for Supplemental Security Income payments, alleging disability beginning April 13, 2007.  AR 166-172, 189.[3]  Plaintiff's application was denied initially and on reconsideration; Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  AR 12.  ALJ Michael J. Haubner held a video hearing on January 14, 2011 and issued a decision on February 7, 2011, finding Plaintiff was not disabled and denying benefits.  AR 12-21.  On March 2, 2012, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  AR 1-4.

**2. The Disability Determination Standard and Process**

A claimant is "disabled" for purposes of entitlement to disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 423(d)(1)(A); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

The Commissioner utilizes a "five-step sequential evaluation process" to assess whether a claimant is disabled.  20 C.F.R. §§ 416.920(a)-(f).  At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and the claim must be

---

[3] References to the Administrative Record are designated as "AR," followed by the appropriate page number.

denied.  § 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of

impairments, the third step requires the Commissioner to determine whether the impairment or

combination of impairments meets or medically equals an impairment in the Listing of

Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is

conclusively presumed and benefits are awarded.  § 416.920(a)(4)(iii).  If the claimant's

impairment or combination of impairments does not meet or equal an impairment in the Listing,

the fourth step requires the Commissioner to determine whether the claimant has sufficient

residual functional capacity ("RFC") to perform her past work; if so, the claimant is not disabled

and the claim must be denied.  § 416.920(a)(4)(iv).  The claimant has the burden of proving that

she is unable to perform past relevant work (*i.e.*, in steps one through four of the analysis).

*Drouin*, 966 F.2d at 1257; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  If the claimant

meets that burden, a *prima facie* case of disability is established.  *Id*.  In that event, or if the

claimant has no past relevant work, the Commissioner then, in the fifth and final step of the

sequential analysis, bears the burden of establishing that the claimant is not disabled because she

can perform other substantial, gainful work available in the national economy.  20 C.F.R. §

416.920(a)(4)(v); *Drouin*, 966 F.2d at 1257.

### 3.     The ALJ's Findings and Decision

Using the Social Security Administration's five-step sequential evaluation process, the

ALJ determined that Plaintiff did not meet the disability standard.  AR 12-21.  More particularly,

the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 28, 2008,

her protective application filing date.[4]  AR 14; 189.  Further, the ALJ found that Plaintiff suffered

from the following "severe" impairments: mild lumbar degenerative joint disease; cervical spine

---

[4] The ALJ noted that "[a]lthough earning records indicate that the claimant worked at substantial gainful activity levels in 2006, 2007, and 2008, she testified that someone stole her social security number and those were not her earnings.  Therefore, I will continue with the sequential evaluation process to determine whether the claimant is disabled."  AR 14.

degenerative disc disease; hyperthyroidism; liver cirrhosis mostly due to alcoholism; hepatitis C; and "status post stab wounds in the left arm and right wrist and left leg."[5]  AR 14.  The ALJ found Plaintiff's alleged mental impairments to be "nonsevere," after applying the "paragraph B" mental function analysis used to rate the severity of mental impairments as steps 2 and 3 of the disability determination process.  AR 15.  The ALJ next determined that Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 16.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC "to lift and carry 100 pounds occasionally and 50 pounds frequently, stand and/or walk 8 hours and sit 8 hours in an 8-hour workday, and she does not need an assistive device, or have any postural, manipulative, or environmental restrictions."  AR 16.  The ALJ next found that Plaintiff has no past relevant work, but considering her "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy" that she can perform.  AR 19-20.  The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since May 28, 2008," her protective application filing date."  AR 20; 189.

Plaintiff now argues that the ALJ improperly evaluated the psychiatric/psychological opinion evidence in finding Plaintiff's mental impairment to be non-severe.  Doc. 16, pp. 4, 9.  Plaintiff next argues that the ALJ's RFC finding is not supported by substantial evidence.  Doc.

---

[5] The ALJ also determined as follows:

> The claimant also alleges a myriad of complaints including fatigue, history of urinary tract infection, abdominal pain, anemia, hypertension, shortness of breath, history of lupus, chronic pain, irritable bowel syndrome, history of cytopenia, neuralgia, history of dizziness, lower back pain, congestive heart failure, history of syncope, headaches, uterine fibroids, and fibromyalgia … However, as noted by the State agency, most of claimant's objective findings are minimal.

AR 14.

16, p. 6-9.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**DISCUSSION**

**1.   The ALJ Properly Assessed Plaintiff's Mental Impairment at Step 2**

Plaintiff challenges the ALJ's finding that Plaintiff's mental impairment was not severe. Specifically, Plaintiff argues that the ALJ improperly discounted the opinion of the non-treating, examining psychiatrist, Dr. Ina Shalts in favor of the opinions of state agency reviewing psychiatrists/physicians.  Doc. 16, pp. 4-5.  The Commissioner responds that the ALJ properly relied on the contradictory opinions of state agency reviewing doctors as well as other medical evidence in the record.

***A.     Summary of the Relevant Medical Opinions***

**(i)      Dr. Ina Shalts**

Dr. Shalts examined Plaintiff on October 10, 2008 in Bakersfield, California.  AR 322. Dr. Shalts noted that the "source of information" for her examination "was the claimant, herself, and her records."  AR 322.  Claimant reported depressive symptoms and prior suicide attempts,

but denied current suicidal ideation and any psychiatric admissions.  AR 323.  Claimant reported

that after she was stabbed in a store in 2007, "she started hearing voices talking to her in the

background."  AR 322.  Claimant also reported PCP addiction, and attending Alcoholics

Anonymous and Narcotics Anonymous meetings.  AR 324.  Dr. Shalts diagnosed Plaintiff with

"mood disorder not otherwise specified" and "psychotic disorder not otherwise specified," but

ruled out post-traumatic stress disorder.  AR 325.  Regarding Plaintiff's prognosis, Dr. Shalts

opined: "I believe that this claimant is not able to maintain gainful employment due to her

psychotic symptoms and mood changes.  She would benefit from treatment of her mental illness."

AR 325.  As to Plaintiff's functional assessment, Dr. Shalts stated that (1) Plaintiff "is able to

understand, carry out, and remember simple instructions;" (2) she "would have some difficulty

responding appropriately to supervisors and coworkers, as well as the public;" (3) she "would

have some difficulty responding appropriately to the usual work situation and dealing with a

routine work setting, as well as attending a job on a regular basis due to her mental illness;" and

(4) she "is unable to manage her own funds."  AR 326.

### (ii) **Dr. N. Haroun**

State agency reviewing psychiatrist, Dr. N. Haroun reviewed Dr. Shalts' conclusions on

November 5, 2008.  Dr. Haroun reviewed Plaintiff's medical records and determined that there

was no longitudinal medical evidence in Plaintiff's records to support Dr. Shalts' findings.  AR

320-321.  Dr. Haroun reviewed records from Plaintiff's treating physicians and noted a marked

absence of psychiatric complaints, history, or clinical findings suggesting that Plaintiff suffered

from a psychiatric impairment.  AR 319.  He also noted that Plaintiff evidently did not seek

psychiatric treatment during the periods she was incarcerated.  AR 320.  Dr. Haroun observed that

although Plaintiff reported being diagnosed with Bipolar Disorder to Dr. Shalts, there was no

evidence to support this assertion in her records.  He also noted that Plaintiff had denied all drug

or alcohol abuse to one of her treating physicians.  AR 320.  Dr. Haroun concluded, "[t]here are obvious credibility issues regarding this claimant's alleged mental impairment."  AR 319.

Dr. Haroun also stated, "[p]er her own statements, claimant is actively using illegal substances that are known to produce hallucinations.  Overall her MSE showed fairly intact cognition, in fact her intact ability to recall all her history, her attention and concentration during the exam, and many of her other responses on the MSE all indicate that this claimant does not have a severe MDI."  AR 320.  Dr. Haroun prepared a Psychiatric Review Technique Form ("PRTF") analyzing Plaintiff's functional limitations on account of any mental impairment.[6]  AR 327-337.  Dr. Haroun found that Plaintiff had no restrictions in activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  AR 335.

**(iii)    Dr. Paul Frye**

In a report dated October 24, 2008, state agency reviewing physician Dr. Paul Frye questioned Dr. Shalts' conclusions.  AR 319.  After summarizing Dr. Shalts' conclusions, Dr. Frye states that "[t]here is no longitudinal history to confirm the Y CE findings.  Have Y eval for MRFC."  AR 319.  While Dr. Frye's assessment is not totally clear, he appears to indicate that Plaintiff's mental RFC should be re-evaluated.

---

[6] SSR 96-8p provides:

> The psychiatric review technique described in 20 C.F.R. 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(iv)**     <u>**Dr. G. Bugg and Dr. J. Fuller**</u>

On May 6, 2009, state agency reviewing physician Dr. G. Bugg, reviewed Plaintiff's file. Dr. Bugg noted inconsistencies between Plaintiff's allegations and objective medical findings in her records, and concluded that Plaintiff does not appear fully credible.  He agreed with Dr. Haroun's prior finding that Plaintiff's psychological issues were non-severe.  AR 377.  Next, on May 20, 2009, "after a complete review of all the MER in the file," Jocelyn Fuller, Ph.D., affirmed Dr. Haroun's "PRTF dated 11/5/08 for nonsevere."  AR 379.

**B.**  *Other Medical Record Evidence Regarding Plaintiff's Mental Impairment*

On September 3, 2008, not long before her consultative examination with Dr. Shalts, Plaintiff requested a mental health assessment from the Kern County Mental Health Department. AR 403-409.  Plaintiff was evaluated; referred for therapy; and found to be stable.  AR 397-400. Plaintiff did not attend therapy but appeared to remain stable.  AR 397.  On December 30, 2008, Marriage and Family Therapist Ralph Rogers diagnosed her with Post-Traumatic Stress Disorder, opioid abuse, depressive disorder not otherwise specified, and phencyclidine dependence; Mr. Rogers also determined that Plaintiff had a Global Assessment of Fucntioning ("GAF") score of 51.  AR 394, 397.  On the same date, Plaintiff was discharged from the Kern County Mental Health Department program for voluntarily withdrawing from the program/not attending the program.  AR 395.

During 2009-2010, Plaintiff's treating physicians were Dr. Don Tran and Dr. Ryan Drury at Bakersfield Family Medical Center, who repeatedly examined Plaintiff for various complaints and continuously updated their records regarding her medical and mental symptoms.  Their records indicate that Plaintiff suffers from chronic depression and anxiety, and that she was prescribed Effexor for her symptoms.  AR 577; 592, 606.  With the possible exception of Dr. Tran's progress notes for September 16, 2010 (when he noted that Plaintiff was negative for

8

psychiatric symptoms and anxiety but was at risk for worsening depression, and referred her to Kern Family Mental Health), the numerous progress notes from Bakersfield Family Medical Center, taken together, indicate that Plaintiff's depression and anxiety were generally stable and well-controlled with Effexor.  AR 58-581.  For example, on May 15, 2010, Dr. Tran simply noted that Plaintiff was positive for depression and psychiatric symptoms.  AR 585.  On March 7, 2010, Dr. Tran noted that Plaintiff was negative for psychiatric/emotional problems, and that she had a flat affect and was not anxious.  AR 588-589.  On January 26 and February 29, 2010, Dr. Tran noted that Plaintiff had "no memory loss or emotional disturbances."  AR 593, 596.  On February 25, 2010, he further noted that Plaintiff's affect is normal, is not anxious."  AR 593.  On October 12, 2009, Dr. Tran determined that Plaintiff's depression is stable with Effexor and that she did not have suicidal ideation, anhedonia or memory loss.  AR 606, 608.  Dr. Tran's notes for July 13, 2009 state: "pt notes uncontrolled depression secondary to running out of Effexor and seeks med refill[;] pt claims her depression is well controlled with this med."  AR 610.  Dr. Drury's notes after examining Plaintiff on August 12, 2009, state that Plaintiff's depression and anxiety were stable, and that there was "no unusual affect or evidence of depression."  AR 381.  And, on June 26, 2009, Dr. Drury noted that Plaintiff's depression and anxiety were stable, and that she had no "unusual affect or evidence of depression."  AR 615.

   *C.   The ALJ's Findings*

   The ALJ found Plaintiff's mental impairment to be "nonsevere" at step two of his disability analysis.  The ALJ discussed the medical evidence in the record regarding Plaintiff's mental impairment.  He noted that Plaintiff "has been diagnosed with posttraumatic stress disorder (PTSD), opioid dependence, depressive disorder, PCP dependence [by an MFT at Kern Family Mental Health], and mood disorder and psychotic disorder [by Dr. Ina Shalts, the psychiatric consultative examiner]."  AR 15.  The ALJ  noted that he gave "little weight" to the

9

opinion of the consultative psychiatrist, Dr. Ina Shalts, who concluded that Plaintiff would be unable to maintain gainful employment.  He relied instead on "several State agency opinions [specifically, the opinions of Dr. Frye, Dr. Haroun, Dr. Bugg and Dr. Fuller] that the claimant's mental conditions are not severe."  AR 15.

The ALJ gave a number of reasons as to why he discounted Dr. Shalts' opinion in favor of the contradictory opinions of Drs. Haroun, Bugg and Fuller.  First, he found the State agency opinions to be "consistent with the record as a whole."  AR 15.  The ALJ analyzed the record regarding Plaintiff's mental impairments as follows: (1) the record showed that "claimant's depression and anxiety were stable;" (2) there was no indication from any treating physician that Plaintiff was unable to work; and (3) although the "claimant underwent a mental health evaluation," she "did not keep follow-up appointments and did not attend therapy sessions."  AR 15.  As to Dr. Shalts' opinion, the ALJ noted that she found that Plaintiff had "some difficulty with interaction and responding to work and attendance" and would be unable to work.  AR 15.  The ALJ determined that Dr. Shalts' conclusion "invade[s] on an opinion reserved to the Social Security Administration (SSR 96-5)."[7]  AR 15.

Finally, in applying the "paragraph B" criteria to assess the severity of Plaintiff's mental impairment, the ALJ found, "[b]ecause the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they

---

[7]The ALJ noted that Dr. Shalts examined Plaintiff in 2008 and opined that Plaintiff was unable to work on account of her mental impairments, but, based on her earnings records, Plaintiff *may* actually have had substantial gainful activity in 2006, 2007, and 2008.  AR 15.  The ALJ deliberately used the wording "*may* have had substantial gainful activity," (emphasis added), because at the disability hearing, Plaintiff denied she had worked during those years and stated that someone had stolen her identity.  Plaintiff testified that during those years, "I just went to Cal State, and that was it;" however, Plaintiff also testified that she had completed her program at Cal State in June 2006.  AR 37.  The ALJ noted that an August, 2008 progress note from one of Plaintiff's treating doctors indicates that Plaintiff had asked for a medical excuse to take time off from work at that time.  AR 15.  Although a progress note dated August 7, 2008, from Dr. Fernando Bravo does state, "Pt still in too much pain so she wants an excuse from work for another month," the progress note from Plaintiff's next appointment, on September 9, 2008,  states that Plaintiff was "off *school* one month."  AR 369-370 (emphasis added).

are nonsevere."  AR 15.

### D.  Legal Standard for Evaluating Whether an Impairment is Severe

At step two of the five-step sequential disability inquiry, the Commissioner determines "whether medical evidence establishes an impairment or combination of impairments of such severity as to be the basis of a finding of inability to engage in any SGA." [8]  SSR 85-28, 1985 WL 568556 (1985) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Under Social Security regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [an individual's] physical or mental ability to do basic work activities." [9]  20 C.F.R. §§ 404.1521(a), 416.921(a).  Social Security Ruling ("SSR") 85-28 further clarifies that an impairment or combination of impairments is "not severe" when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities *which would have no more than a minimal effect on an individual's ability to work* even if the individual's age, education, or work experience were specifically considered."  SSR 85-28, 1985 WL 568556 (1985) (emphasis added); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28); *Thune v. Astrue*, 499 Fed.Appx. 701, 703 (2012) (an impairment can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work).  Put differently, the step two severity inquiry is a "de minimus screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (1996).

When a mental impairment is at issue, the regulations require a state agency reviewing physician to rate the claimant's functional limitations in four broad areas (activities of daily

---

[8] SGA stands for "substantial gainful activity."

[9] Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," including physical functions (such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling); capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 140.1521(b), 416.921(b).

living; social functioning; concentration, persistence or pace; and episodes of decompensation). The ALJ's written decision must then address the reviewing physician's findings in relation to his determination at step two of the analysis.  SSR 96-8p, 1996 WL 374184; 20 C.F.R. §§ 404.1520a(c)(3) and (e), 416.920a(c)(3) and (e).  If the degree of functional limitations in the first three functional areas is rated as "none" or "mild" and "none" in the fourth area, the impairment is generally considered not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

> ### E.   Legal Standard for Discounting a Non-Treating Consultative Examiner's Opinion in Favor of a State Agency Reviewing Physician's Opinion

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining physician's opinion is not contradicted, it can be rejected only for clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a non-examining physician cannot *by itself* constitute substantial evidence to justify the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990).  However, the opinion of a non-examining physician may constitute substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1041, 1043; *Lester*, 81 F.3d at 830-831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989) (approving the ALJ's decision to reject the opinions of Magallanes' treating physicians because in so doing,

the ALJ did not rely on the nonexamining physician's testimony *alone*); *Roberts v. Shalala*, 66 F.3d 179,184 (9th Cir. 1995) (affirming ALJ's rejection of examining psychologist's functional assessment which conflicted with non-examining medical advisor's testimony and with his own written report and test results).

The Ninth Circuit has explained that "the type of evidence and reasons that would justify rejection of an examining physician's opinion might not justify rejection of a treating physician's opinion." *Lester*, 81 F.3d at 831, n. 8.  While Ninth Circuit "cases apply the same legal standard in determining whether the Commissioner properly rejected the opinion of examining and treating doctors—neither may be rejected without 'specific and legitimate' reasons supported by substantial evidence in the record, and the uncontradicted opinion of either may only be rejected for 'clear and convincing' reasons—[they] have also recognized that the opinions of treating physicians are entitled to greater deference than those of examining physicians."  *Id.* (citations omitted).  "Thus, reasons that may be sufficient to justify the rejection of an examining physician's opinion would not necessarily be sufficient to reject a treating physician's opinion. Moreover, medical evidence that would warrant rejection of an examining physician's opinion might not be substantial enough to justify rejection of a treating physician's opinion."  *Id*.

### F.   Analysis

The question presently before the Court is whether the ALJ applied the correct legal standards in finding that Plaintiff's mental impairment was "nonsevere" and whether this finding is supported by substantial evidence in the record as a whole.

In reaching his "nonsevere" finding, the ALJ discounted the opinion of Dr. Shalts, a non-treating, examining psychiatrist,[10] and relied, instead, on the contrary opinions of the state agency reviewing physicians.  AR 15.  As detailed in section 1C of this order, above, the ALJ gave a

---

[10] As a non-treating source, Dr. Shalts examined Plaintiff one time and was not afforded the "opportunity to know and observe the patient as an individual."  *Magallanes*, 881 F.2d at 751.

number of reasons for doing so, including that the opinions of the state agency physicians were "consistent with the record as whole." AR 15. The ALJ noted that Plaintiff's medical records "indicate that claimant's depression and anxiety [were] stable." AR 15. He further noted that Plaintiff did not keep follow-up appointments and did not attend therapy sessions after seeking a mental health evaluation, which would also indicate that her mental impairment was stable. AR 15. Finally, the ALJ noted that no treating physician had indicated that Plaintiff had functional restrictions on account of her mental impairment, indicating that Dr. Shalts' opinion was an outlier. AR 15. The ALJ's stated reasons for discounting Dr. Shalts' opinion in favor of the state agency reviewing physicians' opinions are "specific and legitimate." [11] *See Roberts*, 66 F.3d at 184; *also see Lester* at 831.

The ALJ's reasons for discounting Dr. Shalts' opinion are, furthermore, supported by substantial evidence in the record. *See Andrews*, 53 F.3d at 1041, 1043 (the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it); *Lester*, 81 F.3d at 830–31. First, the ALJ relied on the contrary opinion of not just one, but multiple state agency physicians, at least three of whom found that Plaintiff's mental impairments were not severe. Next, Plaintiff's medical records indicate that her mental symptoms of depression and anxiety were generally mild and well-controlled by Effexor; indeed Plaintiff stated as much to her treating physician, Dr. Tran. AR 573-660; 380-382; 610. Moreover, Plaintiff's medical records contain no indication that her mental symptoms restricted her functioning in more than a minimal way. [12]

---

[11] Although Dr. Shalts noted that "[t]he source of information [for her examination] was the claimant, herself, and her records," Dr. Shalts' opinion appears to based solely on Plaintiff's self-reports and does not reference any of Plaintiff's medical records. AR 322-326. Since the ALJ found Plaintiff to be not credible, and Plaintiff does not challenge the ALJ's credibility finding here, the ALJ could properly have discounted Dr. Shalts' opinion on the additional basis that it was based to a large extent on self-reports that had been found to be unreliable. *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

[12] Given that the Court has remanded this matter on other grounds, however (see below), the ALJ is free to, but not required to, consider the feasibility of an additional psychiatric consultative examination for Plaintiff on remand.

Similarly, the ALJ's overarching finding that Plaintiff's mental impairments were "nonsevere" is also proper and supported by substantial evidence in the record.  AR 15.  The ALJ addressed Dr. Haroun's PRTF findings as required and determined that Plaintiff's mental impairment does not significantly limit her ability to do basic work activities.  AR 15; *see also* SSR 96-8p, 1996 WL 374184; 20 C.F.R. § 416.920a(c)(3) and (e); 20 C.F.R. § 416.921(a) ("[a]n impairment or combination of impairments is not severe if it does not significantly limit [an individual's] physical or mental ability to do basic work activities").[13]

### 2.    The ALJ Improperly Assessed the Plaintiff's RFC at Step 4

Plaintiff's treating physicians did not provide assessments of Plaintiff's RFC for the ALJ's consideration.  Instead, Plaintiff was evaluated by a non-treating consultative examiner, Dr. Sarupinder Bhangoo, on September 4, 2008.  Dr. Bhangoo determined that Plaintiff had the RFC to perform heavy work.  AR 314.  The ALJ, in subsequently making his own RFC determination that Plaintiff can perform heavy work, gave "significant weight" to the opinion of Dr. Bhangoo.  AR 19.  Plaintiff now argues that Dr. Bhangoo's opinion is "an inadequate and insufficient basis" for the ALJ's RFC determination because some of Plaintiff's "more serious impairments did not surface until after September 4, 2008, the date of Dr. Bhangoo's evaluation" and Dr. Bhangoo did not have access to all of Plaintiff's medical records.  Doc. 16, p. 7.  The Commissioner responds that Dr. Bhangoo's opinion as an examining physician, who conducted an independent examination of Plaintiff, alone constitutes substantial evidence.  Doc. 20, p. 7.  The Commissioner further argues that Plaintiff's argument that the ALJ did not consider all of her impairments lacks merit because it is based on Plaintiff's self-reports of symptoms—which the

---

[13] The ALJ is reminded that, even though he determined Plaintiff's mental impairment to be "nonsevere," he must nonetheless consider Plaintiff's mental impairment in assessing Plaintiff's RFC at step 4. *See* 20 C.F.R. 916.945 (in assessing residual functional capacity, the adjudicator  "will consider all of [a claimant's] medically determinable impairments of which [the Commissioner is] aware, including … medically determinable impairments that are not "severe," as explained in §§ 416.920(c), 416.921, and 416.923"); Social Security Ruling 96-8p, ("[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe").

ALJ had discredited to the extent they were inconsistent with his RFC finding—and multiple

diagnoses, which, in and of themselves, "do not reflect limitations on Plaintiff's capacity to

perform work activity."  Doc. 20, p. 8.

### A.    Dr. Bhangoo's Examination and Opinion

Dr. Bhangoo, who is board certified in internal medicine, conducted a comprehensive

internal medicine evaluation of Plaintiff on September 4, 2008.  AR 311.  Plaintiff's chief

complaint related to muscle spasms and numbness resulting from stabbing injuries to the left leg,

left arm and right wrist, dating from 2007.  AR 311.  Dr. Bhangoo noted that "[t]he claimant

comes into the examination room without any difficulty.  She moves around well.  She is able to

get in and out of the chair, climb upon the examination table.  She does not seem to be in any

pain.  She is noted to be using both upper arms to support herself, and does not seem to be in any

distress."  AR 312.  Her gait was nonantalgic, she was able to tiptoe and heel walk, and Romberg

sign was absent. AR 312.  Her straight leg raising was negative in both sitting and supine

positions, and motor strength was 5/5.  AR 313. (Tr. 313).  She reported hearing voices.  Dr.

Bhangoo diagnosed her with status post stab wounds and mental problems, but noted that the

mental problems would be evaluated separately.  AR 314.

Dr. Bhangoo concluded that although Plaintiff reported numbness of the left hand,

"neurologic examination [did] not reveal any nerve damage, as her grip strength, tone, and bulk

of muscle is normal."  AR 14.  Dr. Bhangoo noted, "[i]n fact, sensory examination is normal as

well, suggestive that the stab wounds were superficial.  She is also noted to be able to do her

personal care and household work—suggestive that the claimant is in fact leading a very normal

life."  AR 314.  Dr. Bhangoo assessed Plaintiff's RFC as follows: Plaintiff could sit, stand and/or

walk for eight hours in an eight-hour workday; did not need an assistive device; could lift one

hundred pounds occasionally and fifty pounds frequently; she had no limitations on bending,

16

stooping, and crouching or in reaching, handling, feeling, grasping, and fingering; and she had no limitations of vision, communication, or workplace environment.  AR 314.  Dr. Bhangoo summed up his RFC evaluation as follows: "[b]ased upon examination and lack of any specific neurological or musculoskeletal problems, the claimant's maximal functional capacity is rated as heavy, with no specific limitations."  AR 314.

### B.    The ALJ's RFC Determination

In his February 7, 2011 decision, the ALJ also found that Plaintiff had the RFC to perform heavy work.  AR 16.  Specifically, the ALJ found that Plaintiff could "lift and carry 100 pounds occasionally and 50 pounds frequently, stand and/or walk 8 hours and sit 8 hours in an 8-hour workday, and she does not need an assistive device, or have any postural, manipulative, or environmental restrictions."  AR 16.

Plaintiff, in contrast, had testified that, at any one time, she could lift and carry 5 pounds, stand 15 minutes, sit 1.5 hours, walk one block, and concentrate for 5-7 minutes; she further testified that she had to elevate her feet for 7 hours in an 8-hour work day and did not ever bend down because she had problems getting back up.  AR 17; 39-41.  The ALJ found that Plaintiff was "devoid of credibility."  AR 17.  He supported his credibility finding with specific reasons and a detailed analysis of the evidence, and noted that Plaintiff's medically determinable impairments could reasonably be expected to cause very few of her alleged symptoms.  AR 17.  The ALJ concluded, "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  AR 17-18.

The ALJ next analyzed medical record and opinion evidence and concluded that his RFC assessment was "supported by the overall evidence" as discussed in his decision.  AR 19.  The ALJ noted that he gave Dr. Bhangoo's opinion "significant weight" because Dr. Bhangoo

examined Plaintiff, is board certified, and his opinion is consistent with the record as a whole. AR 19.  The ALJ observed that the state agency reviewing physicians, Dr. Frye and Dr. Bugg, in their respective opinions dated September 15, 2008 and May 6, 2009, had concluded that claimant's physical impairments were nonsevere.  AR 19.  The ALJ noted he differed in finding that Plaintiff had some severe physical impairments, but, nonetheless, gave their opinions "some weight" in assessing Plaintiff's physical RFC because they are "consistent with the record as a whole."  AR 19.

The ALJ noted that Plaintiff was under treatment for hepatitis C in December 2010; had complained of back pain since a car accident in 2001; and had suffered stab wounds on April 13, 2007.  The ALJ documented that Plaintiff underwent a neurological evaluation in February 2009, by Dr. Rolando Young.  Dr. Young noted that Plaintiff complained of chronic dizziness but does not pass out any more, and that the etiology of Plaintiff's ailment was not very clear; Dr. Young also referenced some type of neuralgia.  AR 19.  The ALJ stated that "I take [Dr. Young's] report into consideration and give it some weight; however, it is not particularly helpful in determining what the claimant is functionally able to do.  AR 19.

The ALJ observed that Plaintiff was seen for a rheumatologic evaluation by Dr. Martin Berry in February 2009.  Dr. Berry reported a normal heart rate and rhythm without murmurs, gallops, or rubs; clear lungs; soft non-tender abdomen; normal neurological exam; no synovitis of the joints; mild restriction in neck motions; trigger points in the neck and shoulder; and tenderness along elbows and trochanteric bursa.  AR 372-373.  The ALJ recorded Dr. Berry's conclusion as follows: "the claimant had cirrhosis of the liver related mostly to alcoholism, her picture was consistent with fibromyalgia [but not supported by the requisite number of trigger points], and he recommended increasing her dose of Neurontin and maintaining her antidepressants."  AR 19 (parentheses in original).

The ALJ noted that a January 2009 CT scan of Plaintiff's abdomen "showed advanced cirrhosis associated with portal hypertension."  AR 18.  Further, "an MRI of the cervical spine in March 2010 showed C5-6 right paracentral disc protrusion into the lateral recess resulting in moderate effacement of the thecal sac and mild central canal stenosis, but no chord signal changes or foraminal stenosis."  AR 18.  The ALJ observed that the record reflects that Plaintiff suffered from hyperthyroidism that was getting worse, despite treatment.  AR 18.  He found, however, that although Plaintiff was hospitalized for thyrotoxicosis with thyroid crisis, congestive heart failure, hypotension, respiratory acidosis, and hypoxemia, she was discharged only three days later and was under the care of an endocrinologist who switched her medication.  AR 18.

After analyzing the medical evidence detailed above, the ALJ concluded that his RFC assessment that Plaintiff was capable of heavy work was supported by "the overall evidence."  AR 19.

### C.     Analysis

While the ALJ provided a relatively detailed analysis of the medical record and opinion evidence in support of his RFC determination, ultimately his determination is not supported by substantial evidence in light of the record as a whole.  The ALJ adopted the RFC assessment of Dr. Bhangoo and relied on Dr. Bhangoo's opinion, because he found it to be "consistent with the record as whole, Dr. Bhangoo examined the claimant, and he is board certified."  AR 18-19.  The problem with the ALJ's analysis, however, is that Dr. Bhangoo did not consider, among other impairments, Plaintiff's liver cirrhosis, hepatitis C, hyperthyroidism, heart and respiratory problems, and systemic lupus erythematosus and related medical issues,[14] in making his RFC assessment.  Indeed, Dr. Bhangoo could not have considered a number of these impairments in making his RFC assessment because they occurred or were diagnosed after his September 2008

---

[14] *See, e.g.,* neurology consultation report dated March 2, 2010, by Dr. Richard Alexan-Shirabad.  AR 529-530.

examination of Plaintiff.

The Court notes that neither Dr. Bhangoo, the state agency physicians, nor the ALJ considered the fact that Plaintiff was diagnosed with systemic lupus erythematosus by Dr. Martin Berry, a rheumatologist, in February 2010.  The reports of Drs. Bhangoo, Frye and Bugg pre-date Dr. Berry's diagnosis.  As for the ALJ, his decision only mentions Dr. Berry's progress notes regarding Plaintiff's initial appointment, a year earlier in February 2009, when Dr. Berry did "not see evidence of lupus." AR 273.  However, Plaintiff returned to Dr. Berry on February 25, 2010, when Dr. Berry noted, "[s]he is now describing a photosensitive rash, as well as Raynaud's phenomenon.  She has had a positive ANA and other positive lupus serologies, including elevated anti-Smith and RNP antibodies … She has several family members who have had serious forms of lupus." AR 666.  Dr. Berry further observed, "[o]n examination, she has mild malar erythematous rash which crosses the bridge of the nose.  She has visible Raynaud's phenomenon without sclerodactyly."  AR 666.  Dr. Berry assessed her condition as "[s]ystemic lupus erythematosus – 710.0 (Primary)" and prescribed Plaquenil therapy, 200 mgs. twice a day." AR 666.  Dr. Berry's 2010 diagnosis of lupus was not considered at any relevant stage of the administrative proceedings.

Plaintiff testified at her disability hearing that she had lupus, and that her symptoms included fatigue, weight changes, joint pain, skin rashes, swelling of the hands, and a weakened grip.  AR 68-69.  Plaintiff also complained of fatigue and pain at a February 19, 2010 appointment with Dr. Berry.  Dr. Berry's notes for that appointment state, however, that on musculoskeletal examination, Plaintiff did not have synovitis; she also had "[n]o major flare ups since last visit." AR 664.  At Plaintiff's last appointment (included in the present administrative record), Dr. Berry observed and recorded in his notes that Plaintiff was having a variety of heart problems but no "other active lupus symptoms right now." AR 662.  Dr. Berry also noted that

1    "[t]here is no synovitis."  AR 662.

2         Plaintiff's lupus diagnosis and possibly related heart and respiratory problems, as well as
3
     her hyperthyroidism, liver cirrhosis, and hepatitis C were not considered by Dr. Bhangoo in
4
     reaching his RFC assessment that Plaintiff is capable of heavy work, but the ALJ nonetheless
5
6    gave significant weight to Dr. Bhangoo's opinion and adopted his RFC assessment.  The state

7    agency reviewing physicians, Dr. Frye and Dr. Bugg similarly conducted their reviews before Dr.

8    Berry diagnosed Plaintiff with systemic lupus erythematosus in February 2010.  The ALJ also did

9    not consider Plaintiff's lupus diagnosis at step 2 or step 4.  The Court therefore reverses the ALJ's
10
     decision and remands this matter for the ALJ to reevaluate the medical evidence.
11
         On remand, the ALJ shall order an additional consultative examination(s) of Plaintiff, so
12
     that an appropriate consultative physician(s) may address the impairments that came to light after
13
14   Dr. Bhangoo's 2008 examination (for example, systemic lupus erythematosus and any related

15   impairments, heart and respiratory problems, liver cirrhosis, hepatitis C, hyperthyroidism), as

16   deemed necessary by the ALJ.  Such an additional consultative examination is required for the

17   ALJ to be able to properly evaluate Plaintiff's medical history and make a renewed step 2
18
     determination and a renewed step 4 RFC determination based on all the evidence in the record.[15]
19
     See 20 C.F.R. § 916.945 (the Commissioner will assess a claimant's RFC "based on all of the
20
     relevant medical and other evidence" and the Commissioner is "responsible for developing [a
21
22   claimant's] complete medical history, including arranging for a consultative examination(s) if

23   necessary"); Social Security Ruling 96-8p ("[t]he adjudicator must consider all allegations of

24   physical and mental limitations or restrictions and make every reasonable effort to ensure that the

25   file contains sufficient evidence to assess RFC"); *also see Brown v. Heckler,* 713 F.2d 441, 443

26

27   _____
     [15]Reevaluation of the medical evidence on remand, based on an additional examination of Plaintiff by an appropriate
28   consulting physician, may also potentially impact the ALJ's findings regarding Plaintiff's credibility.  *See* 20 C.F.R.
     § 416.929.

(9th Cir. 2003) ("[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered"); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (the ALJ has a duty to develop the record or "conduct an appropriate inquiry" when the evidence is ambiguous or the ALJ finds the record is not sufficient for him to evaluate the evidence and make a determination as to Plaintiff's alleged disability).

Here, given that Plaintiff suffered from serious heart, respiratory and thyroid problems after Dr. Bhangoo conducted his examination, and the fact that his report does not reference Plaintiff's liver cirrhosis, hepatitis-C infection, and lupus diagnosis, the medical record is ambiguous and insufficient for the ALJ to evaluate the evidence and make a determination regarding Plaintiff's alleged disability.  Moreover, the ALJ's decision itself overlooks entirely Plaintiff's diagnosis of lupus and her prognosis in relation to this disease, in contravention of 20 C.F.R. § 916.945 and Social Security Ruling 96-8p.  Consequently, the ALJ's decision is not supported by substantial evidence in the record as whole.  Reversal of the ALJ's decision and remand of the case for further development of the record and redetermination of Plaintiff's claim is therefore appropriate.

### Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED.  The case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Carmen Socorro Delgadillo and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

///

///

///

1

2    IT IS SO ORDERED.

3        Dated:    __September 30, 2013__              _____/s/ Gary S. Austin__

4                                              UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28